**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────────────

**MARK E. HAMISTER, OLIVER HAMISTER,**
**GEORGE HAMISTER, HEALTH SERVICES OF**
**NORTHERN NEW YORK, INC., BROMPTON**
**HEIGHTS, INC., and ORCHARD HEIGHTS, INC.,**

                               **Plaintiffs**                       06-CV-0600A(Sr)

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY,**
**LIBERTY MUTUAL ACQUISITION COMPANY, f/k/a**
**LIBERTY MUTUAL FIRE INSURANCE COMPANY,**
**LIBERTY INSURANCE CORPORATION,**
**LM INSURANCE CORPORATION,**
**THE FIRST LIBERTY INSURANCE CORPORATION,**
**and HELMSMAN MANAGEMENT SERVICES, INC.,**

                               **Defendants.**

─────────────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

        This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #7   Currently before me is defendants' motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), and to consolidate this action with *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr) (Dkt. #15); defendants' motion for sanctions pursuant to Fed. R. Civ. P. 11 (Dkt. #17); and plaintiffs' motion for sanctions pursuant to Fed. R. Civ. P. 11.  Dkt. #27.

For the following reasons, it is recommended that defendants' motion to dismiss be granted in part and denied in part; defendants' motion to consolidate be granted; defendants' motion for sanctions be granted; and plaintiffs' motion for sanctions be denied.

## **BACKGROUND**

Plaintiffs are insureds, or successors-in-interest to insureds, under Workers' Compensation and Employers Liability Policies ("Policies"), issued to National Health Care Affiliates, Inc. ("NHCA"), in 1996 and 1997.  Dkt. #20, p.3.  With the exception of Helmsman Management Services, Inc., defendants are member companies of the Liberty Mutual Group.  Dkt. #13, ¶¶ 8-12 & 14.  "Helmsman Management Services, Inc. is a wholly owned subsidiary of Liberty Mutual Group, which provides services for self-insured companies." Dkt. #13, Exh. A, bates no. 4488.  The Liberty Mutual Group is not named as a defendant in the amended complaint. Dkt. #13.

There are two Policies relevant to 1996.  Policy WA1-68D-004123-016 is issued by the Liberty Mutual Insurance Company covering NHCA in the states of Colorado, Florida, New York and Virginia for an estimated annual premium of $296,774.  Dkt. #13, Exh. D.  Policy WC2-681-004123-036 is issued by the Liberty Mutual Fire Insurance Company  covering NHCA in the state of Oregon for an estimated annual premium of $71,450.  Dkt. #13, Exh. H.

By letter dated December 6, 1996 on "Liberty Mutual Group" letterhead, Dennis Ast, the National Account Service Manager, sent Dennis J. Badame, C.P.M., the Director of Materials and Services for NHCA, a proposal for renewal of NHCA's workers' compensation insurance.  Dkt. #13, Exh. B, bates no. 4479.  The proposal listed premiums and assessments for the following six states: Oregon; Colorado; Florida; New York; Virginia; and Ohio.  Dkt. #13, Exh. B, bates no. 4479.  The proposal noted that the figures "represent[] the premium for a Large Deductible program except where stated with a $500,000 deductible per claim and an Aggregate Limit, all states [sic] of $3,000,000."  Dkt. #13, Exh. B, bates no. 4479.  Oregon was marked with an asterik which explained that it was "Not Subject to Deductible Program."  Dkt. #13, Exh. B, bates no. 4480.  The letter included a post script noting the enclosure of a booklet providing information about Liberty Mutual.  Dkt. #13, Exh. B, bates no. 4480.

The "Liberty Mutual Group Overview of Services" brochure attached to plaintiffs' complaint provides the following "Facts and Figures" on the "Liberty Mutual Insurance Company":

- Founded in 1912 in Boston

- Leading Workers Compensation Carrier Since 1936

- Best's Rating – "A"

- Over 700 Loss Prevention Personnel

- Over 3500 Claims Professionals

- Over 500 Rehabilitation Centers

- 54 Claims Offices and Over 100 Service Sites

Dkt. #13, Exh. B, bates no. 4481 & 4484.  The brochure also includes an insert from the

"Liberty Mutual Insurance Company – National Accounts Underwriting" detailing

"National Health Care Affiliates, Inc.['s] Ten Year Schedule for Security WC Large

Deductible Plan Proposal Effective 1/1/97."  Dkt. #13, Exh. B, bates no. 4510.  None of

the other defendant insurance companies are mentioned by name in the brochure.  Dkt.

#13, Exh. B.  Helmsman Management Services, Inc. has a page in the brochure

identifying it as "a wholly owned subsidiary of Liberty Mutual Group, which provides

services for self-insured companies" and listing those services.  Dkt. #13, Exh. B, bates

no. 4488.

        In 1997, the Liberty Mutual Insurance Company issued Policy WA1-68D-

004123-017 covering NHCA in the states of Colorado, Florida, New York and Virginia

for an estimated annual premium of $115,436.  Dkt. #13, Exh. E.  Liberty Mutual Fire

Insurance Company issued Policy WC2-681-004123-037 covering NHCA in Oregon in

1997 for an estimated annual premium of $46,085.  Dkt. #13, Exh. I.

        On October 29, 2001, NHCA commenced an action against the Liberty

Mutual Insurance Company in New York State Supreme Court, Erie County.  01-CV-

798 – Dkt. #1.  The case was removed to federal court, where the Liberty Mutual

Insurance Company moved to dismiss the complaint.  01-CV-798 --  Dkt. #4.  In a

Report, Recommendation and Order dated March 12, 2003 and adopted by the Hon.

Richard J. Arcara on January 20, 2004, NHCA's claims for breach of contract,

deceptive business practices, punitive damages and attorneys' fees were dismissed.

Dkt. ##16 & 24.

-4-

Plaintiffs commenced this action by filing a summons and complaint in New York State Supreme Court, Erie County, on August 18, 2006.  Dkt. #2.  The matter was removed to this Court on September 7, 2006.  Dkt. #1.  Defendants moved to dismiss; plaintiffs filed an amended complaint.  Dkt. ##6 & 13.  The amended complaint sets forth seven causes of action:

> (1)  breach of contract;
>
> (2)  breach of fiduciary duty;
>
> (3)  negligent performance of its common law and statutory duties;
>
> (4)  deceptive business practices;
>
> (5)  breach of its duty of good faith and fair dealing;
>
> (6)  fraud; and
>
> (7)  unjust enrichment.

Dkt. #13.  Plaintiffs seek punitive damages with respect to the second through seventh causes of action.  Dkt. #13.


## DISCUSSION AND ANALYSIS

### Dismissal Standard

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

> enough to raise a right to relief above the speculative level
> on the assumption that all the allegations in the complaint
> are true.

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 167 L.Ed.2d 929, 940 (2007) (internal

citations omitted).  In setting forth this standard, the Supreme Court disavowed an often

quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at

943, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Supreme Court

explained that

> This "no set of facts" language can be read in isolation as
> saying that any statement revealing the theory of the claim
> will suffice unless its factual impossibility may be shown from
> the face of the pleadings; and the Court of Appeals [for the
> Second Circuit] appears to have read *Conley* in some such
> way when formulating its understanding of the proper
> pleading standard.

*Id.* at 943.  The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of
> facts," a wholly conclusory statement of claim would survive
> a motion to dismiss whenever the pleadings left open the
> possibility that a plaintiff might later establish some "set of
> [undisclosed] facts" to support recovery.  So here, the Court
> of Appeals specifically found the prospect of unearthing
> direct evidence of conspiracy sufficient to preclude
> dismissal, even though the complaint does not set forth a
> single fact in a context that suggests an agreement.  It
> seems fair to say that this approach to pleading would
> dispense with any showing of a "'reasonably founded hope'"
> that a plaintiff would be able to make a case; Mr. Micawber's
> optimism would be enough.

*Id.* at 944 (internal citations omitted).  The Supreme Court then limited *Conley* to

describing "the breadth of opportunity to prove what an adequate complaint claims, not

the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at

945.  The Supreme Court reiterated that it did "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on it face." *Id.*

at 949.


The Court of Appeals for the Second Circuit recognized that *Bell Atlantic*

*Corp. v. Twombly* has created "[c]onsiderable uncertainty concerning the standard for

assessing the adequacy of pleadings." *Iqbal v. Hasty*, 490 F.3d 143, 155

(2d Cir. 2007).  "After careful consideration" of that decision, the Court of Appeals has

concluded that "the Court is not requiring a universal standard of heightened fact

pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible." *Id.* at 157-58.


**Evidentiary Standard**

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration "to facts stated on the face of the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken." *Leonard*

*F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also*

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  "Where a plaintiff has

relied on the terms and effect of a document in drafting the complaint and that

document is thus integral to the complaint," the district court may consider the contents

of the document "even if it is not formally incorporated by reference." *Broder v.

Cablevision Systems Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations

omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  "If

the documents referenced in the complaint contradict the facts alleged by the plaintiff,

the documents control and the court need not accept as true the plaintiff's allegations."

*Olin Corp. v. E.I. DuPont De Nemours & Co.*, No. 05-CV-100, 2006 WL 839415

(W.D.N.Y. March 27, 2006).


A  district court may take judicial notice of documents filed in other courts

to establish the fact of such litigation and related filings.  *Kramer*, 937 F.2d at 774.  A

district court may also "take judicial notice of admissions in pleadings and other

documents in the public record filed by a party in other judicial proceedings that

contradict the party's factual assertions in a subsequent action."  *Harris v. New York

State Dep't of Health*, 202 F. Supp.2d 143, 173 n.13 (S.D.N.Y. 2002), *citing Kramer*,

937 F.2d at 774.  In the matter of *Pandozy v. Gumenick*, for example, the district court

granted a motion to dismiss a cause of action for attorney malpractice on statute of

limitations grounds where plaintiff's second amended complaint alleged continuous

representation but prior complaints in that action and other actions, as well as

documents authored by plaintiff, stated that plaintiff had terminated the attorney.  No.

07 Civ. 1242, 2008 WL 2190151, at *3 (S.D.N.Y. May 23, 2008).

**Application of New York Law**

   "Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues."  *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994), *citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."  *Id.* Accordingly, "[w]here the highest court of a state has not resolved an issue, the . . . federal court 'must apply what [it] find[s] to be the state law after giving proper regard to relevant rulings of other courts of the State.'" *Kline v. E.I. DuPont De Nemours & Co., Inc.*, 15 F. Supp.2d 299, 302 (W.D.N.Y. 1998), *quoting Travelers Ins. Co.*, 14 F.3d at 119 (internal quotation omitted).


**Breach of Contract**

Proper Defendants

   As an initial matter, defendants assert that the only defendant in a contractual relationship with plaintiffs is the Liberty Mutual Insurance Company.  Dkt. #15-13, pp. 7-11.


   Plaintiffs argue that they had a contractual relationship with each of the member companies of the Liberty Mutual Group because the proposal for plaintiffs' insurance coverage came from the Liberty Mutual Group and contained no mention of which company would issue coverage.  Dkt. #20, pp.17-18.

Plaintiffs' allegation that they had a contractual relationship with each of the defendants is disingenuous.  There is no dispute that the contracts of insurance for the 1996 Policy, number WA1-68D-004123-016, and the 1997 Policy, number WA1-68D-004123-017 – the only two policies at issue in the complaint[1] – were issued by the Liberty Mutual Insurance Company.  Dkt. #15, Exh. D & E.  Plaintiffs admit as much. Dkt. #20, p.3 ("Liberty Mutual Insurance Company . . . is admittedly the insurer under the Policies").

While plaintiffs allege that defendant Helmsman Management Services, Inc., provided "managed care services in conjunction with the workers' compensation claims under the Policies," the documents attached to plaintiffs' complaint indicate that Helsmann Management Services, Inc., "provides services for self-insured companies." Dkt. #13, ¶ 47 & Exh. A, bates no. 4488.  Plaintiffs do not allege, and the Policies at issue contradict any suggestion, that plaintiffs were self-insured.  Dkt. ##15-7 & 15-8.

It is, therefore, the conclusion of this Court that the proper defendant with respect to the breach of contract claim is the only defendant with whom plaintiffs allege the existence of a contract – Liberty Mutual Insurance Company.

---

[1] Although it is clear that defendant Liberty Mutual Fire Insurance Company issued policy number WC2-681-004123-036 covering NHCA in Oregon in 1996 and policy number  WC2-681-004123-037 covering NHCA in Oregon in 1997, the complaint does not contain any allegations with respect to the handling of claims pursuant to these policies.

Prior Decision

Defendants argue that the breach of contract cause of action should be dismissed for the reasons set forth in this Court's Report, Recommendation and Order in *National Health Care Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr), *to wit*, plaintiffs cannot claim breach of contract with respect to the handling of claims when the contract affords Liberty Mutual Insurance Company discretion with respect to the handling of claims.  Dkt. #15-13, pp. 14-15.

Plaintiffs respond that the allegations of wrongdoing in the instant complaint are "substantially different and markedly more expansive than in the original complaint in [*National Health Care Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr)].  Dkt. #20, p.24.

In the related case of *National Health Care Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr), plaintiff alleged the following:

> Liberty Mutual is obligated to defend any covered claim brought against NHCA and "has been entrusted by NHCA to handle these claims at NHCA's expense." [Dkt. #1] at ¶¶ 10, 14.  The policies "permit defendant to advance part or all of the deductible amount to settle claims brought against NHCA."  *Id.* at ¶ 11.  The policies provide an annual $500,000 deductible for each occurrence with respect to "Bodily Injury By Accident;" a $500,000 deductible for each claim with respect to "Bodily Injury By Disease;" and a $3,000,000 aggregate deductible with respect to "All Covered Bodily Injury."  *Id.* at ¶ 7.
>
> NHCA is responsible up to the deductible amounts for a total of "all benefits required of NHCA by the workers

> compensation law;" "all sums [NHCA] legally must pay as damages;" and "all 'allocated loss adjustment expense' as part of any claim or suit [defendant] defend[s]." *Id.* at ¶ ¶ 8, 12.  Liberty  Mutual is responsible for any benefits, damages and allocated loss adjustment expenses that exceed the applicable deductible amounts.  *Id.* at ¶ 9.  To date, however, "all benefit payments, damages and 'allocated loss adjustment expense' in connection with claims asserted by NHCA employees under the policies have fallen within the applicable deductibles for which NHCA would be solely responsible."  *Id.* at ¶¶ 13-14.

No. 01-CV-798A(Sr) – Dkt. #16, pp.2-3.  Plaintiff alleged the following breach of

contract claims based upon those allegations:

> In its first cause of action, NHCA alleges that Liberty "breached the terms of the Policies by improperly making payments on claims that NHCA was not required to make under the workers' compensation law or the Policies."  Dkt. #1, Exh. A, ¶ 30.
>
> In its second cause of action, NHCA alleges that "[c]onsistent with the terms of the Policies, NHCA specifically instructed defendant that no settlements . . . were to be made without written authorization from NHCA, especially with respect to amounts paid under NHCA's deductible." Dkt. #1, Exh. A, ¶ 35.   NHCA also alleges that Liberty Mutual "agreed to this arrangement for handling claims under the Policies," but "breached the terms of the Policies by settling one or more claims that fell within the applicable deductible . . . without NHCA's knowledge, authorization or consent."  *Id.* at ¶¶ 36, 37.
>
> In its sixth cause of action NHCA alleges that Liberty Mutual "breached the terms of the Policies by failing to fulfill its duty to properly defend claims asserted against NHCA under the Policies."  *Id.* at ¶ 63.

No. 01-CV-798A(Sr) – Dkt. #16, p.7.  The district court adopted this Court's

recommendation to dismiss the breach of contract claims based upon the following

reasoning:

>A breach of contract claim will not lie where "the parties'
>contract unambiguously gave the insurer the unconditioned
>right to settle any claim or suit without plaintiff's consent."
>*Feliberty v. Damon*, 72 N.Y.2d 112, 116 (1988).  In the
>instant case,  NHCA's complaint does not allege any
>contractual provision requiring  Liberty Mutual to consult with
>or obtain approval from NHCA before settling any claim.  To
>the contrary, the complaint states that Liberty Mutual "has
>been entrusted by NHCA to handle . . . claims at NHCA's
>expense" and that the insurance contracts "permit defendant
>to advance part or all of the deductible amount to settle
>claims brought against NHCA."  Dkt. #1, Exh. A, ¶¶ 11, 14.
>The complaint also concedes that "[t]o the extent defendant
>incurs 'allocated loss adjustment expense' [sic] within the
>deductible amount or properly advances settlement funds
>within the deductible amount, NHCA is generally obligated to
>reimburse defendant for such amounts . . .." *Id.* at ¶ 12.
>Having granted Liberty Mutual discretion to handle claims,
>NHCA  may not claim that Liberty Mutual's exercise of that
>discretion breaches the express terms of the contract. *See*
>*Liberty Mutual Ins. Co. v. Thaille Construction Co.,* 116 F.
>Supp.2d 495, 501 (S.D.N.Y. 2000).

No. 01-CV-798A(Sr) – Dkt. #16, p.8.


In contrast to the focused allegations of the complaint set forth in *National*

*Health Care Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr),

the amended complaint in the instant action alleges two and one-half pages of acts and

omissions in alleged breach of the contract.  Dkt. #13, ¶ 50.  Despite this level of detail,

the allegations cannot sustain a breach of contract cause of action with respect to the

handling of claims because, as plaintiffs recognized in the related action involving these

policies, the policies afford Liberty Mutual Insurance Company

>the right and duty to defend at our expense any claim,
>proceeding or suit against you for benefits payable by this
>insurance.  We have the right to investigate and settle these
>claim, proceedings or suits.

Dkt. #15-3, Exh. D & E.  Having granted Liberty Mutual Insurance Company the right to defend, investigate and settle claims against plaintiffs, plaintiffs cannot sustain a breach of contract cause of action against Liberty Mutual Insurance Company based upon allegations of improper handling, administering, managing, investigating, settlement, monitoring, evaluation, staffing, auditing, *etc.*, of those claims.  *See Feliberty v. Damon*, 72 N.Y.2d 112, 116 (1988); *National Union Fire Ins. Co. of Pittsburgh, PA v. Jay Tee Equities Co.*, 216 A.D.2d 546, 546-47 (2d Dep't 1995).   Accordingly, it is recommended that the breach of contract cause of action be dismissed.


### Breach of Fiduciary Duty

<u>Proper Defendants</u>

Plaintiffs claim that the Policies establish a fiduciary relationship between defendants and its insureds.  Dkt. #13, ¶ 54.  Because plaintiffs allege that the fiduciary duty arises from the contractual relationship, the duty cannot be expanded beyond the parties to the insurance contracts.  As a result, the only appropriate defendant in the breach of fiduciary duty cause of action is the Liberty Mutual Insurance Company.


<u>Statute of Limitations</u>

Defendants argue that the statute of limitations for a breach of fiduciary duty would limit this action to claims arising subsequent to August 17, 2003.  Dkt. #15-3, p.5.

Plaintiffs respond that the statute of limitations cannot be addressed with respect to the breach of fiduciary duty claims because the Liberty Mutual Insurance Company continues to handle claims pursuant to these policies.  Dkt. #20, p.20.

Plaintiffs seek monetary and punitive damages as a result of defendants' breach of fiduciary duty.  Dkt. #13, ¶ 56.  The statute of limitations for a breach of fiduciary duty seeking only monetary damages is three years.  *Bouley v. Bouley*, 19 A.D.3d 1049, 1051 (4th Dep't 2005); N.Y. C.P.L.R. § 214.   As a result, for purposes of the motion to dismiss, the Court can be confident that any breach of fiduciary duty which occurred prior to August 18, 2003 would be barred by the statute of limitations. Stated another way, the statute of limitations bars review of any claims which were resolved prior to August 18, 2003.

Prior Decision

Defendants request that the Court reconsider its prior determination that the Liberty Mutual Insurance Company could owe plaintiffs a fiduciary duty.  Dkt. #15-3, p.15.

Plaintiffs argue that there is no basis for the Court to reconsider this determination.  Dkt. #15-3, p.22.

In its Report, Recommendation and Order in *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr), the Court

conducted the following analysis:

> A breach of fiduciary duty is a tort and . . . the Court of
> Appeals, with regard to a tort arising from a breach of
> contract, stated: "Ordinarily, the essence of a tort consists in
> the violation of some duty due to an individual, which duty is
> a thing different from the mere contract obligation.  When
> such a duty grows out of relations of trust and confidence,
> as that of the agent to his principal or the lawyer to his client,
> the ground of the duty is apparent, and the tort is, in general,
> easily separable from the mere breach of contract" (Rich v.
> N.Y.C. & H.R.R. Co., 87 N.Y. 382, 390 [1882]). However,
> other than in exceptional cases, a cause of action sounding
> in tort . . . cannot depend upon a fiduciary or other character
> of the relationship created by the contract alone, for no such
> relationship exists (*id.*, at 395).

*Batas v. Prudential Ins. Co. of America*, 281 A.D.2d 260, 264 (1st Dep't.
2001).  It is clear, therefore, that "an arms-length contract between two
parties does not by itself give rise to fiduciary duties between them;
something more is required."  *United Magazine Co. v. Murdoch Magazines
Distr., Inc.*, 2001 WL 1607039 (S.D.N.Y. Dec. 17, 2001).  Absent a
showing that their relationship is "unique or differs from that of a
reasonable consumer," there is

> no reason to depart from the general rule that the
> relationship between the parties to a contract of insurance is
> strictly contractual in nature.  No special relationship of trust
> or confidence arises out of an insurance contract between
> the insured and the insurer; the relationship is legal rather
> than equitable.

*Batas*, 281 A.D.2d at 264; *see Rochester Radiology Assocs*, 616 F.Supp
985, (W.D.N.Y. 1985) ("I find nothing in the case law or New York statutes
to indicate that an insurance company is a fiduciary for its policyholders; in
fact, the law appears to be to the contrary.").

As plaintiff notes, however, the District Court for the Southern
District of New York has recognized a fiduciary duty once the insurer has
undertaken the defense of the insured against a third party.  *Dornberger
v. Metro. Life Ins. Co.*, 961 F. Supp. 506 (S.D.N.Y. 1997).  In that case,
the court considered "several cases of ancient vintage, all of which state
that the relationship between an insurance company and a policyholder is
an ordinary contractual one lacking the elements of trust and confidence
which a fiduciary relationship requires . . . [and] two opinions of more

recent vintage which follow these older decisions." *Id.* at 545-46 (internal citations omitted). The Court then recognized that:

> a recent decision of the Eastern District of New York concluded that a jury should be permitted to inquire into the nature of the relationship between an insurer and its insureds to assess whether a relationship of trust and confidence existed. *See United States v. Brennan*, 938 F.Supp. 1111, 1120-21 (E.D.N.Y. 1996). *Brennan* did not cite any of the aforementioned cases rejecting the existence of a fiduciary relationship in the insurance context. Rather, *Brennan* followed a line of cases holding that an insurer owes a fiduciary duty to its insured when the insurer is representing the insured in litigation involving third parties. *See Hartford Accident and Indem. Co. v. Michigan Mut. Ins. Co.*, 93 A.D.2d 337 . . . (1983), *aff'd* 61 N.Y.2d 569 . . . (1984).

*Id.* at 546. The *Dornberger* court went on to state that "[t]he basis for the fiduciary obligation is quite clear in the litigation context, for the insurer is undertaking to represent the insured's interests." *Id.* Finding that "[p]laintiff here alleges several facts from which the existence of a relationship of trust and confidence can be inferred," the *Dornberger* court denied the defendant's motion to dismiss plaintiff's breach of fiduciary duty claim. *Id.; cf. Weiss v. La Suisse,* 69 F. Supp.2d 449, 461-62 (S.D.N.Y. 1999) ("As plaintiffs do not allege a single fact from which a trier of fact could conclude that their relationship with defendants or their agents was imbued with elements of 'trust and confidence,' so as to render it more than an arm's length business association, their claim cannot stand."); *L.C. Whitford Co., Inc.*, No. 01-CV-0277.

The *Brennan* case relied upon by the *Dornberger* court involved an indictment against a lead insurer, USAU, who undertook responsibility for managing claims and litigation arising under aviation insurance policies written by a consortium of insurers known as USAIG. *United States v. Brennan*, 938 F. Supp. 1111 (E.D.N.Y. 1996), *reversed on other grounds,* 183 F.3d 139 (2d Cir. 1999). Following an accident involving USAir, lawsuits were filed against, *inter alia*, USAir and the company responsible for airport security, Ogden-Allied. *Id.* at 1116. As lead insurer, USAU managed the litigation on behalf of USAIG, which insured both USAir and Ogden-Allied. *Id.* Owing to reinsurance, USAIG had no exposure for any damages imposed upon USAir. *Id.* With respect to Ogden-Allied, however, USAIG was exposed for 75% of any damages imposed under a $7.5 million policy. *Id.* In settlement of some of the lawsuits, USAU allocated 100% liability to USAir. *Id.*

The indictment alleged, *inter alia*, that the lead insurer owed a fiduciary duty both to the insured and to the other insurers. *Id.* at 1115. The defendants moved to dismiss the indictment. *Id.* at 1118-19. Applying New York law, the *Brennan* court stated that:

> The fiduciary relationship that an insurer owes to its insured is a fixture of New York law. Relying primarily upon *Hartford Accident*, federal courts have consistently interpreted New York case law to impose such a duty.

*Id.* at 1121 (internal citations omitted).

On appeal following conviction, the Court of Appeals for the Second Circuit expressed concern regarding the District Court's jury instruction for fiduciary duty wherein it

> emphasized that "[a] fiduciary relationship involves discretionary authority and dependency" and that "at the heart of the fiduciary relationship lies reliance, *and de facto control and dominance*. The relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other . . . " *Chestman*, 947 F.2d at 568, 569 (quotation marks and citations omitted; emphasis added). We think the elements of domination or control are of particular importance in a case like this one, where all parties to the various contractual relationships were concededly sophisticated companies with experience in the industry, and where the alleged victims had a variety of practical and contractual rights to participate in or challenge defendants' decisions.[2]

*Brennan*, 183 F.3d at 150-51.

In the *Hartford* case upon which *Brennan* relies, Michigan Mutual was the primary insurer and Hartford was the excess insurer of DaFoe and its subsidiary, L.A.D., defendants in an underlying personal injury action. *Hartford*, 93 A.D.2d at 338. Plaintiff was employed by D.A.L., another subsidiary of DeFoe, at the time of the accident. *Id.* Michigan Mutual provided workers' compensation coverage for D.A.L. *Id.* Hartford sued Michigan Mutual, alleging that "Michigan Mutual, by deliberately refusing to join the employer as a third party defendant, breached a

---

[2] The policy provided the coinsurers a right to investigate any claims with a gross reserve in excess of $100,000 and to participate in handling and supervision of such claims. *Id.* at 142.

fiduciary duty owed by the primary carrier to the excess carrier."  *Id.* at 340.  The trial court dismissed the claim, but the Appellate Division reinstated, stating:

> It is well-established that, as between an insurer and its assured, a fiduciary relationship does exist, requiring utmost good faith by the carrier in its dealings with its insured.  In defending a claim, an insurer is obligated to act with undivided loyalty; it may not place its own interests above those of its assured.  Similarly, it has been recognized in this and other states, as well as in the federal courts, that the primary carrier owes to the excess insurer the same fiduciary obligation which the primary insurer owes to its insured, namely, a duty to proceed in good faith and in the exercise of honest discretion . . .

*Id.* at 340-41.  The Appellate Division further noted that

> The essence of Hartford's claim is that Michigan Mutual breached its fiduciary obligation to its assureds and to Hartford, as the excess insurer, in that by not proceeding against the employer as a third party defendant, Michigan Mutual sought to avoid additional liability under its separate employer's liability coverage.  Such action, placing its own interest above that of the excess carrier, amounts to a breach of fiduciary duty.  Michigan Mutual, to whom the defense of the underlying action had been entrusted, owed a primary obligation to its assured and to the excess insurer to exercise good faith in handling the defense and to safeguard the rights and interests of the excess carrier.

*Id.* at 342.  In affirming the *Hartford*, decision, the Court of Appeals framed the issue solely in terms of a "duty to act in good faith."  *Hartford*, 61 N.Y.2d at 574.

No. 01-CV-798A(Sr) – Dkt. #16, pp.14-19.

In its Report, Recommendation and Order, the Court concluded its analysis of Liberty Mutual Insurance Company's motion to dismiss the breach of fiduciary duty cause of action by noting that:

-19-

> In the instant case, NHCA alleges that Liberty Mutual was
> entrusted to defend and settle any claims brought against
> NHCA, but that it has improperly exercised its control over
> claims brought against NHCA by settling claims without merit
> over NHCA's objections and at NHCA's sole expense.
> These allegations of trust and confidence, discretionary
> authority, and *de facto* control and dominance are sufficient
> to state a cause of action for breach of fiduciary duty.

No. 01-CV-798A(Sr) – Dkt. #16, p.19.  The District Court agreed that Liberty Mutual's

motion to dismiss NHCA's cause of action for breach of fiduciary duty should be denied.

No. 01-CV-798A(Sr) – Dkt. #24.


As in *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance*

*Company*, No. 01-CV-798A(Sr), the gravaman of this cause of action is that the Liberty

Mutual Insurance Company was entrusted by plaintiffs to defend and settle claims

brought against plaintiffs and that the Liberty Mutual Insurance Company exercised its

complete discretion over the administration of claims in such a way as to minimize its

expense in administering the claims and negate its own potential liability under the

Policies, causing plaintiffs to incur unnecessary and excessive liability and increased

premiums.  Dkt. #13, ¶¶ 44-48, 51 & 54.  These allegations are sufficient to state a

claim for breach of fiduciary duty.  Accordingly, it is recommended that defendant's

motion to dismiss the cause of action for breach of fiduciary duty be denied.


**Negligent Performance**

Plaintiffs' third cause of action alleges that defendants negligently

breached their duty to properly administer, defend and settle claims brought against

plaintiffs under the policies.  Dkt. #13, ¶62.

Defendants argue that this cause of action must be dismissed because plaintiffs cannot demonstrate that defendants owed plaintiffs any duty outside of the contractual obligations set forth in the policies.  Dkt. #15-13, p.21.

Plaintiffs do not respond to this argument.

"It is a well-established principle that a simple breach of contact is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Company*, 70 N.Y.2d 382, 389 (1987).  "This legal duty must spring from circumstances extraneous to, and not constituting elements of the contract, although it may be connected with and dependent on the contract."  *Id.*  As plaintiffs' complaint alleges that the Liberty Mutual Insurance Company "negligently breached" the duties and obligations imposed by the Policies, this cause of action must be dismissed.  Dkt. #13, ¶ 62.

**Deceptive Business Practices**

Statute of Limitations

Defendants argue that plaintiffs' allegations of deceptive practices in connection with the sale of policies in 1996 and 1997 are barred by the three-year statute of limitations.  Dkt. #15-13, p.5.

Plaintiffs' fourth cause of action alleges that defendants solicited the policies at issue by virtue of materially false, misleading and deceptive representations

regarding its claims handling, administration and management ability.  Dkt. #13, ¶ 67.

Specifically, plaintiffs allege that

> The Liberty Group convinced NHCA to purchase standard
> workers' compensation insurance based on false and
> misleading representations that it could provide competent
> multi-state claims handling, administration and management
> and would otherwise perform the responsibilities required by
> an insurer in connection with the handling of workers'
> compensation claims.

Dkt. #15-13, ¶ 75.  Plaintiffs reiterate that

> The Liberty Group enticed NHCA and plaintiffs into
> purchasing workers' compensation insurance based on its
> materially misleading deceptive business practices.

Dkt. #15-13, ¶ 79.   As these allegations relate to the purchase of the policies, which

occurred in 1996 and 1997, and the complaint was not commenced until 2006, it is

clear that this claim is barred by the three-year statute of limitations.  *See  Gaidon v.*

*Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 208-09 (2001) (statute of limitations for

deceptive business practices claim brought pursuant to New York General Business

Law § 349 is three years); N.Y. C.P.L.R. § 214(2).  Accordingly, it is recommended that

plaintiffs' fourth cause of action be dismissed.


**Duty of Good Faith and Fair Dealing**

Proper Defendants

Because the duty of good faith and fair dealing arises from the contractual

relationship, it cannot be expanded beyond the parties to the insurance contracts.  As a

result, the only appropriate defendant to the cause of action alleging breach of the duty

of good faith and fair dealing is the Liberty Mutual Insurance Company.

<u>Statute of Limitations</u>

Defendants seek to dismiss as much of this claim as is barred by the statute of limitations, *to wit*, claims accruing prior to August 18, 2000.  Dkt. #20, pp.7-8.

Plaintiffs assert that the breaches of the contract are ongoing as defendants continue to administer claims which arose under the respective contracts.  Dkt. #20, p.20.

New York law provides a six-year statute of limitations for breach of contract claims.  N.Y. C.P.L.R. § 213(2).  The statute begins to run upon breach of the contract, not when the injured party discovers the breach.  *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 404 (1993).  Thus, for purposes of the motion to dismiss, the Court can be confident that any breach of the covenant of good faith and fair dealing which occurred prior to August 18, 2000 is barred by the statute of limitations.  Stated another way, the statute of limitations bars review of those claims which were resolved prior to August 18, 2000.

Defendants do not otherwise challenge this cause of action in their motion to dismiss.  Dkt. #34, p.8.

**Fraud**

<u>Statute of Limitations</u>

Defendants argue the cause of action for fraud is barred by the statute of limitations since the allegations relate to the purchase of the policies in 1996 and 1997

and plaintiffs were aware of the fraud, as evidenced by the related lawsuit in *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr), no later than 2001.  Dkt. #15-13, p.6.

Plaintiffs allege that defendants made material, false and misleading representations to plaintiffs while "soliciting insurance business from plaintiffs."  Dkt. #13, ¶ 87.  Plaintiffs specifically allege "false and misleading written statement that were provided to plaintiffs' representative, NHCA, in 1995 and 1996 . . . ."  Dkt. #13, ¶ 89. Plaintiffs claim that they relied upon these representations in deciding to entrust defendants with the handling of their workers' compensation claims.  Dkt. #13, ¶ 92.

A cause of action for fraud must be commenced within six years of the commission of the fraud or two years from the date the fraud could reasonably have been discovered.  *Sargiss v. Magarelli*, 50 A.D.3d 1117 (2d Dep't 2008); N.Y. C.P.L.R. § 213(8).  As plaintiffs' lawsuit in the related action of *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr), demonstrates that plaintiff was aware of the alleged fraud no later than August 29, 2001, and this action was not commenced until August 18, 2006, plaintiffs cannot defeat the statute of limitations bar based upon the discovery rule.  As a result, the only misrepresentations which may be considered for purposes of a claim of fraud are those which plaintiffs relied upon subsequent to August 17, 2000.  Thus, plaintiffs' claim that they were fraudulently induced to purchase the policies in 1996 and 1997 are barred by the statute of limitations.

Specificity

> The only allegation of fraudulent misrepresentation subsequent to August 17, 2000 is an allegation that

> > Between 1996 and 2001, Dennis Ast, as a fiduciary to plaintiffs, repeated some or all of these misrepresentations to plaintiffs' representative Jack Turesky and others at NHCA and otherwise continued to take affirmative acts of fraud as an ongoing effort to conceal the Liberty Group's conduct and to perpetuate the illusion that the Liberty Group was properly handling the workers' compensation claims.

Dkt. #13, ¶ 93.  However, this allegation fails to meet the specificity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  This Rule requires that the plaintiffs (1) detail the statements (or omissions) that they contend are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent.  *Eternity Global Master Fund v. Morgan Guar. Trust*, 375 F.3d 168, 187 (2d Cir. 2004); Fed. R. Civ. P. 9(b). Plaintiffs' allegation that Dennis Ast "repeated some or all" of the alleged misrepresentations contained in the marketing brochure "[b]etween 1996 and 2001" is insufficient.  Accordingly, it is recommended that plaintiffs' cause of action for fraud based upon misrepresentations regarding the administration of workers' compensation claims be dismissed for failure to allege with any specificity any allegedly fraudulent statement made subsequent to August 17, 2000.


**Unjust Enrichment**

Proper Defendants

> Defendants assert that none of the defendants other than the Liberty Mutual Insurance Company received any benefit from the relationship with plaintiffs, as

-25-

plaintiffs paid their premiums to the Liberty Mutual Insurance Company.  Dkt. #25-7, p.6.

To prevail on a claim of unjust enrichment in New York, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution.  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).   In the instant case, however, there is no plausible allegation that any of the other defendants obtained any benefit as a result of plaintiffs' contracts with the Liberty Mutual Insurance Company.  Accordingly, it is recommended plaintiffs' cause of action for unjust enrichment also be dismissed against the defendants other than the Liberty Mutual Insurance Company.

Duplicative of Breach of Contract Cause of Action

Defendants argue that the cause of action for unjust enrichment should be dismissed because such a claim cannot proceed where there is a contract which governs the claims at issue.  Dkt. #15-3, p.22.

Plaintiffs argue that the motion must be denied because the defendants have not yet answered the complaint and may challenge the validity of the contract. Dkt. #20, p.7.  Moreover, plaintiffs note that they have alleged fraud, which may result in the contract being voided, thereby substantiating a claim of unjust enrichment in the alternative.  Dkt. #20, p.9.

Defendants respond that the alternative pleading rules do not apply because there is no dispute as to the validity and enforceability of the contracts.  Dkt. #25-7, p.1.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Clark-Fitzpatrick,* 70 N.Y.2d at 388.  In the instant case, it is beyond dispute that there are valid and enforceable contracts between plaintiffs and the Liberty Mutual Insurance Company which govern the subject matter of the unjust enrichment claim, *to wit*, Liberty Mutual Insurance Company's handling of workers' compensation claims.  Dkt. #13, ¶¶ 100-104.  Accordingly, it is recommended that the seventh cause of action be dismissed against the Liberty Mutual Insurance Company.

**Punitive Damages**

Defendants argue that the amended complaint fails to allege facts to support recovery of punitive damages because there is no allegation that defendants' actions were part of a pattern of conduct directed at the public.  Dkt. #15-3, p.15.

Plaintiffs argue that their allegation that defendants have been sued in 121 state and federal courts throughout the United States for improper handling, administration or management of large self-insured or large self-retention workers' compensation claims programs are sufficient to support a claim for punitive damages.  Dkt. #20, p.16.

Defendants respond that the existence of similar lawsuits is insufficient to support a claim for recovery of punitive damages.  Dkt. #25-7, p.4.

Plaintiffs seek punitive damages with respect to every cause of action except the first breach of contract claim.  Dkt. #13.  Assuming that the District Court adopts this Court's recommendation that the causes of action for negligent performance of  contract, deceptive business practices, fraud and unjust enrichment be dismissed, punitive damages remain at issue with respect to the causes of action alleging breach of fiduciary duty and breach of the duty of good faith and fair dealing.

"Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as gross and morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations."  *New York Univ.,* 87 N.Y.2d at 315-16 (internal quotations omitted); *see Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 614 (1994); *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961).  It has also been described as

> conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.  Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness.

*Home Ins. Co. v. American Home Products Corp*., 75 N.Y.2d 196, 203-04 (1990) (internal quotation and citations omitted).

Because the purpose of punitive damages "is not to remedy private wrongs but to vindicate public rights," punitive damages are not recoverable for an ordinary breach of contract. *Rocanova*, 83 N.Y.2d at 613. However,

> Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the *Walker* standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.

*Id.* Although there has been some discussion as to the continued applicability of the public harm requirement on breach of contract claims seeking punitive damages, the Court of Appeals for the Second Circuit has found "no reason to question its continued vitality." *TVT Records v. The Island Def Jam Music Group,* 412 F.3d 82, 94 (2d Cir. 2005), *cert. denied*, 548 U.S. 904 (2006).

As this Court noted in its Report, Recommendation and Order in the related case of *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr), the breach of fiduciary duty cause of action satisfies the threshold requirement of an independent tort. 01-CV-798A(Sr) – Dkt. #16, pp.24-25. Moreover, plaintiffs' allegations that the Liberty Mutual Insurance Company placed its own interests over those of plaintiffs by settling claims without merit over plaintiffs' objections and at plaintiffs' expense are sufficiently egregious to sustain a cause of action for exemplary damages. However, the amended complaint fails to allege that Liberty Mutual Insurance Company's allegedly improper conduct was directed at the

public generally.  The Policies at issue provided workers' compensation insurance to a corporation with employees in multiple states, with no allegation that claimants were denied coverage or otherwise compromised by the Liberty Mutual Insurance Company's administration of claims.  As the harm was directed not to the general public, but to companies with whom Liberty Mutual Insurance Company contracted, punitive damages are not appropriate for this cause of action.  Accordingly, it is recommended that the demand for punitive damages be dismissed with respect to the fifth cause of action alleging breach of the duty of good faith and fair dealing which is inherent in the contractual relationship between the parties.

The claim for punitive damages may remain with respect to the breach of fiduciary duty, as this is an independent tort for which punitive damages are available regardless of the element of public harm.  *See Brink's, Inc. v. City of New York*, 717 F.2d 700, 705 (2d Cir. 1983) ("New York law does not preclude the award of punitive damages where the conduct that gives rise to a contract action is also tortious."); *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (1988) ("Punitive damages are allowable in tort cases such as this [breach of fiduciary duty case] so long as the very high threshold of moral culpability is satisfied."); *Don Buchwald Assoc's, Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001) ("The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty.").

**Consolidation**

Defendants seek to consolidate this action with *National Healthcare Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-798A(Sr).  Dkt. #15-3, p.24.

Rule 42(a) of the Federal Rules of Civil Procedure provides that the Court may consolidate actions before the court which involve a common question of fact or law.  "The trial court has broad discretion to determine whether consolidation is appropriate."  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990).  In exercising its discretion, the Court must consider whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.  *Id.* at 1285.

As the plaintiffs in both actions are insureds or successors-in-interest to insureds under the same policies and are represented by the same counsel, who has moved to amend the complaint in 01-CV-798A(Sr) to conform to this complaint, these cases clearly involve common questions of fact and law.  Any differences between the two cases arising from, for example, the application of the statute of limitations, can be easily explained to a jury.  Accordingly, it is recommended that this action be consolidated with 01-CV-798A(Sr).

**Sanctions**

Defendants move for sanctions pursuant to Fed R. Civ. P. 11.  Dkt. #17.

In support of their motion, defendants assert that plaintiffs failed to fulfill their obligation

to perform a reasonable inquiry into the facts and law before filing the amended

complaint.  Dkt. #17.  Specifically, plaintiffs assert that there was no legitimate basis for

naming any of the defendants other than the Liberty Mutual Insurance Company.  Dkt.

#17.  Defendants assert that plaintiffs were clearly aware that the Liberty Mutual

Insurance Company was their insurer by virtue of the fact that the related lawsuit,

*National Health Care Affiliates, Inc. v. Liberty Mutual Insurance Company*, No. 01-CV-

798A(Sr), was commenced on November 9, 2001 solely against the Liberty Mutual

Insurance Company.  Dkt. #17.  Moreover, defendants assert that it was clear from the

December 6, 1996 proposal stating that Oregon is "Not Subject to the Deductible

Program," and the issuance of Policy WC2-681-004123-036 and Policy WC2-681-

004123-037 by the Liberty Mutual Fire Insurance Company that the Oregon claims

were being handled pursuant to a separate policy.  Dkt. #17-2, ¶ 18.


Plaintiffs cross-move for sanctions against defendants, arguing that

defendants filed their motion for sanctions against plaintiffs "to unreasonably and

vexatiously multiply the proceedings in this case."  Dkt. #29, p.6.  Plaintiffs also assert

that they had a good faith basis for naming the Liberty Mutual Group, and all of its

member companies as defendants.  Dkt. #27-2, p.7.  Specifically, plaintiffs rely upon

the December 6, 1996 proposal from the Liberty Mutual Group, asserting that "there is

no mention as to which member company would be issuing the coverage or whether

multiple 'policies' would be issued."  Dkt. #27-2, ¶ 4.  Moreover, plaintiffs note that the

only facility located in Oregon, "Nurses PRN of Oregon," was listed as a named insured

on the 1997 Policy and claims arising out of the Oregon facility were included in

discovery responses seeking claimants pursuant to Policy WA1-68D-004123-016 and

Policy WA1-68D-004123-017.  Dkt. #27-2, ¶ 5.  Plaintiffs' counsel declares that the

"Oregon claims files were produced during 2004."  Dkt. #27-2, ¶ 13, n.3.  Plaintiffs

assert that this inclusion supports their contention that defendants "viewed themselves

as one operating entity, which is precisely the basis for plaintiffs' claims."  Dkt. #27-2, ¶

13.  Plaintiffs assert that

> the Liberty Mutual Group and its member companies blur
> the line between its different member companies when it
> suits their collective purposes. However, when an insured
> has the gumption to challenge these practices, they
> backpedal and hire counsel who is willing to file frivolous
> sanctions motions for no other purposes [sic] than to avoid
> litigation of the dispute on the merits.

Dkt. #27-2, ¶ 22.


> Defendants respond that

> The fact that, in the interest of full disclosure, earlier in this
> lawsuit information regarding claimants from Oregon was
> disclosed by [the Liberty Mutual Insurance Company] was in
> no way a statement that Oregon was "part of" either the
> 1996 or 1997 Policies.  Information concerning Oregon
> claims was produced because plaintiffs requested such
> information.  Producing such information as requested in
> discovery does not change the fact that Oregon had its own
> separate policies through [the Liberty Mutual Fire Insurance
> Company] for 1996 and 1997.

Dkt. #31-2, ¶ 4.

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that:

> **(a)** **Signature.** Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented. . . . .
>
> **(b)** **Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2)   the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4)   the denials of factual contentions are warranted on the evidence, or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> **(c)** **Sanctions.**
>
>> **(1)** **In General**.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.  Absent exceptional circumstances, a law firm must

> be held jointly responsible for a violation
> committed by its partner, associate or
> employee.
>
> &ast; &ast; &ast;
>
> **(4)   Nature of a Sanction.**  A sanction imposed
> under the rule must be limited to what
> suffices to deter repetition of the conduct or
> comparable conduct by others similarly
> situated.  The sanction may include
> nonmonetary directives; an order to pay a
> penalty into court; or, if imposed on motion
> and warranted for effective deterrence, an
> order directing payment to the movant of
> part or all of the reasonable attorney's fees
> and other expenses directly resulting from
> the violation.

An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an "objective standard of reasonableness,' it is clear that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands. *Caisse Nationale de Credit Agricole-CNCA, New York Branc v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994).  The decision whether to impose sanctions is committed to the district court's discretion.  *Perez v. Posse Comitatus*, 373 F.3d 321, 325-26 (2d Cir. 2004).

Sanctions are warranted against plaintiffs' counsel in this action based on several allegations within the amended complaint which are without evidentiary support and which contradict information known by plaintiffs prior to the filing of this complaint. For example, in the verified complaint in 01-CV-798A(Sr), counsel alleged as follows:

> 3.   In or about 1996, defendant [Liberty Mutual Insurance
> Company] issued to NHCA a Workers Compensation

and Employers Liability Policy (Policy Number WA1-68D-004123-016) for the period January 1, 1996 to January 1, 1997 ("1996 Policy").

4.   In or about 1997, defendant [Liberty Mutual Insurance Company] issued to NHCA a Workers Compensation and Employers Liability Policy (Policy Number WA1-68D-004123-017) for the period January 1, 1997 to January 1, 1998 ("1997 Policy").

5.   The 1996 Policy and the 1997 Policy (collectively "Policies") are substantially the same in terms of coverage.

6.   The workers compensation coverage part of the Policies (Part One) generally provides workers compensation insurance to NHCA for its employees in, inter alia, Colorado, Florida, New York and Virginia.

01-CV-798A(Sr), Dkt. #1.  In the amended complaint in 06-CV-600, in contrast, plaintiffs

allege the following:

31.   In or about 1996, the Liberty Group issued a Workers' Compensation and Employers' Liability Policy (Policy Number WA1-68D-004123-016) for the period January 1, 1996 to January 1, 1997 ("1996 Policy").

32.   In or about 1997, the Liberty Group issued a Workers' Compensation and Employers' Liability Policy (Policy Number WA1-68D-004123-017) for the period January 1, 1997 to January 1, 1998 ("1997 Policy").

33.   The 1996 Policy and the 1997 Policy (collectively "Policies") are substantially the same in terms of coverage.

34.   The Policies provide coverage to the insured named parties named therein for workers' compensation claims arising out of the health care business of the plaintiffs in New York, Florida, Virginia, Colorado and Oregon during the policy periods.

Dkt. #13.  However, the Policies are attached to the amended complaint and clearly

state that they are issued by the Liberty Mutual Insurance Company and that they cover

NHCA in the states of Colorado, Florida, New York and Virginia.  Dkt. #13, Exh. D & E.

Moreover, the December 6, 1996 proposal for renewal of NHCA's workers'

compensation insurance, which was also attached to plaintiffs' amended complaint,

listed premiums and assessments for Oregon, Colorado, Florida, New York, Virginia

and Ohio and noted that the figures "represent[] the premium for a Large Deductible

program except where stated with a $500,000 deductible per claim and an Aggregate

Limit, all states [sic] of $3,000,000."  Dkt. #13, Exh. B, bates no. 4479.  Oregon was

marked with an asterik which explained that it was "Not Subject to Deductible Program."

Dkt. #13, Exh. B, bates no. 4480.  Thus, it is clear that the allegation in paragraphs 34

and 43 of plaintiffs' amended complaint, stating that Policy WA1-68D-004123-016 and

WA1-68D-004123-017 provide coverage for workers' compensation claims arising in

New York, Florida, Virginia, Colorado and Oregon, is false.  Dkt. #13, ¶ 34; & Exh. B,

bates no. 4479; Dkt. #15, Exh. D, H & I.


Plaintiffs misrepresented the inclusion of Oregon to support their allegation

that the other insurance companies comprising the Liberty Mutual Group were involved

in the processing of claims under the Policies issued by the Liberty Mutual Insurance

Company, thereby justifying its inclusion of all of these companies as defendants.  For

example, plaintiffs allege that the Liberty Mutual Group

> made representations to induce plaintiffs into purchasing
> coverage and continued to perpetuate the fraud by subsequent
> misrepresentations during the course of handling the claims.
> Even though the Liberty Group ultimately chose to issue the
> Policies through Liberty [Mutual Insurance Company], the

> deceptive conduct and misrepresentations came from the
> Liberty Group and form the basis of plaintiffs' claims.  Moreover,
> the Liberty Group handled the claims under the Policies.

Dkt. #20, pp.3-4.  Thus, plaintiffs allege that

> While the Liberty Group may unilaterally decide to
> administratively issue insurance policies through one of its
> member companies, the promises of coverage and services to
> be performed under the insurance policies come from the
> Liberty Group as a whole.  In fact, even though the policy may
> be issued through one member company, other member
> companies actively participate in the handling of the claim (See
> e.g. Exhibit C).

Dkt. #13, ¶ 24.  Exhibit C, however, references a claim brought by Matthew L. Anderson

against his employer, Nurses PRN of Portland, which is insured by Liberty Mutual Fire

Insurance Company pursuant to Policy WC2-681-004123-037.  Dkt. #13, Exh. C.


In addition, plaintiffs' allegation that "the promises of coverage and services

to be performed under the insurance policies come from the Liberty [Mutual] Group as a

whole" is contradicted by the very brochure plaintiffs allegedly relied upon.  Dkt. #13,

¶ 24.  That brochure specifies the "Liberty Mutual Insurance Company" as the "Leading

Workers Compensation Carrier Since 1936," *etc*.  Dkt. #13, Exh. A, bates no. 4484.

Moreover, the Liberty Mutual Group brochure which plaintiffs attached to their complaint

identifies the Liberty Mutual Insurance Company as the provider for NHCA's "WC Large

Deductible Plan."  Dkt. #13, Exh. A, bates no. 4484 & 4510.


While parties are free to plead alternative legal theories, it is not permissible

to plead false factual allegations to end run the legal conclusions compelled by the

actual facts of the case.  The correct facts, as articulated by plaintiffs since 2001 and as

set forth in the documents attached and incorporated into plaintiffs' amended complaint

in this action, set forth no plausible basis for naming any of the insurance companies in

this action other than the Liberty Mutual Insurance Company.  Accordingly, it is

recommended that plaintiffs' counsel be sanctioned in the amount of 25% of the

reasonable attorneys' fees incurred by defendants in moving to dismiss this action, said

percentage approximating the portion of this motion appropriately devoted to the

propriety of plaintiffs' attempt to join defendants other than the Liberty Mutual Insurance

Company and sufficient to deter plaintiffs' counsel from similar conduct in the future.

## CONCLUSION

For the foregoing reasons, it is recommended that:

(1)   Defendants' motion to dismiss (Dkt. #15), be granted
      in part and denied in part so as to permit the following
      causes of action to proceed against the Liberty
      Mutual Insurance Company: breach of fiduciary duty
      seeking compensatory and punitive damages for
      breaches occurring subsequent to August 17, 2003
      and breach of the duty of good faith and fair dealing
      seeking compensatory damages for breaches
      occurring subsequent to August 17, 2000;

(2)   Defendants' motion to consolidate (Dkt. #15), this
      action with *National Health Care Affiliates, Inc. v.
      Liberty Mutual Insurance Company*, No. 01-CV-
      798A(Sr), be granted;

(3)   Defendants' motion for sanctions (Dkt. #17), be granted; and

(4)   Plaintiffs' motion for sanctions (Dkt. #27), be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made

and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.


***S/ H. Kenneth Schroeder, Jr.***
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge


DATED:     Buffalo, New York
           July 2, 2008